```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY and STATE FARM
FIRE & CASUALTY COMPANY,

        Plaintiffs.
                                                    Memorandum Order
              -against-                             06-CV-2896 (SLT) (JMA)

ROMAN TABAKMAN, M.D., et al.,

        Defendants.
------------------------------------------------------------X
```

A P P E A R A N C E S:

Jay Shapiro, Esq.
Alexis L. Cirel, Esq.
Katten Muchin Rosenman LLP
575 Madison Avenue
New York, N.Y. 1022-2585
*Attorneys for plaintiffs*

Victor Worms, Esq.
305 Broadway Suite 1100
New York, N.Y. 10007
*Of counsel* to Ana Val, Esq.

Ana Val, Esq.
79 Pine Street Suite 178
New York, N.Y. 10005
*Attorney for Yevdosin, Shurko, Empire Car Service, Goldstein and Vecheransky*

**AZRACK, United States Magistrate Judge.**

The instant case involves allegations that defendants operate, for want of a better term, "no fault" mills in the guise of clinics with the twist of organized crime. In order to obtain access to "patients" who qualify for coverage under plaintiffs' policies, the physicians pay

1

leasing and other fees to management companies, which actually control their businesses and the goods and services supplied by the clinics. The "kickback" produces the grist of the mill in the form of the same unnecessary diagnostic tests and consultations for every patient following examination for the same or similar ailments and conditions. The referring physicians allegedly are specifically aware that Dr. Tabakman will make the same predetermined findings that support the need for his consultation and will order the same tests to rule out his predetermined findings. They also allow lay person agents of the management companies to use signature stamps on their reports to facilitate the fraud. In sum, the insurer appears to be skeptical that mere coincidence has produced the following result: victims of automobile accidents who visited these physicians apparently suffered soft tissue injuries which all required the same tests and consultations to rule out the same symptoms and conditions as set forth in the same signature stamped reports. Multiple applications are pending before the Court.

*Sanctions Motions, docs. #89, #90, #92, #95 & #96*

By letter of May 16, 2008, doc. #89, Plaintiff moves for costs and other appropriate relief from Lada Management, Inc., a non-party management company, for events surrounding the deposition of its principal, Oleg Yevdosin. Prior to the deposition, pursuant to the undersigned's order, Lada was to have disclosed documents; however, according to the letter, the entity still has not done so. Plaintiffs apparently attempted to go forward with the deposition and met sufficient alleged breaches of the rules by opposing counsel that in a telephone conference they persuaded the undersigned to order continuation in the courtroom. *See* doc. #84. What unfolded thereafter was a textbook illustration of how a proceeding should not occur, helped along by the Court which viewed completion of the deposition of Yevdosin at the time as the primary goal.

2

To say that Yevdosin gave "evasive" answers when he repeatedly and almost diffidently did not remember what he should have remembered if there had been any preparation and did not know what he should have known, again if there had been any preparation, mildly characterizes his presentation. His demeanor permitted the inference that he did not seem to care if his answers were truthful or accurate. Plaintiffs' attorney also cites an instance of "coaching" and another of "interference", the second instance, an exchange between the witness and his attorney in Russian. Counsel asks the Court to infer from the circumstances that Yevdosin's answers were prompted by or the product of his attorneys' actions.

In response, Victor Worms, of counsel to Lada's attorney, Ana Val, has submitted a letter, doc. #90, in which he accuses Plaintiffs' attorney of having asked questions from a stream of consciousness or from an assumed fact or without any basis in evidence, all of which necessitated repeated objections. The rules contemplate objections, Fed.R.Civ.P. 30(c)(2), but when they admonish that, "[a]n objection must be stated concisely in a nonargumentative and nonsuggestive manner.", they warn against the lengthy colloquy which accompanied most of Worms' objections. And when they state that "the examination still proceeds...", they warn counsel not to have a shouting match with the interpreter, in Russian, which Val did more than once while in court, and which apparently had occurred during the session held prior to the Court's direction to continue the deposition in the courtroom. Counsel's less than professional behavior threatened both the decorum and the continuation of the proceedings and thereby may have attempted to obstruct the Plaintiffs' legitimate efforts at discovery. In light of the conduct of Val and Worms while in court, Worms' cross-motion for the Court to impose Rule 11 sanctions on plaintiffs' for having filed doc. #89 is denied.

As the Court observed in *Life Music, Inc. v. Broadcast Music, Inc.,* 41 F.R.D. 16, 24 (S.D.N.Y. 1966),

> An 'I don't remember' answer is, in effect, a representation that the [witness] has no present recollection and is therefore unable to testify. If that representation is false (that is, the party does in fact have a present recollection), an 'I don't remember' answer is nothing more than a refusal to answer. (Citations omitted).

Contrary to Worms' assertion in doc. #95, that refusal to answer is subject to monetary sanctions under Rule 37(b)(1) as part of the court's contempt power. *Cf. General Ins. Co., etc. v. Eastern Consol. Util, Inc.,* 126 F.3d 215, 220 (3d Cir. 1997) (upholding monetary sanction of expenses and attorney's fees for non-party's failure to appear at a deposition). The determination of whether to impose a monetary sanction in this case rests both on the inferences to be drawn from the circumstances and on the credibility of Yevdosin. Accordingly, in the event that Yevdosin testifies at trial and does remember or does know the answers that he did not remember or know at his deposition, the record will contain a basis for drawing an inference in favor of monetary sanctions against him and Lada Management.[1] The undersigned will then revisit this application in an appropriate hearing during which Yevdosin's credibility will be at issue and following which his credibility will be determined. Plaintiffs' application is denied with leave to renew.

### *Motion to Quash Subpoenas, doc.s. #94 & #97*

Non-parties, Oleg Yevdosin, Eric Shurko and Empire Car Service have moved to quash subpoenas Plaintiffs served on JP MorganChase to obtain their bank records. They contend that

---

[1] The impeachment value of "I don't remember" deposition testimony cannot be underestimated. It serves as a form of a self imposed sanction or limitation, which, along with the penalties for false swearing, should serve as an adequate motivation for witnesses to answer truthfully if they do remember and shift in discomfort when called upon to explain why they didn't remember then but do remember now.

this discovery is nothing more than a fishing expedition for information which will be used to amend the complaint to add them as parties.  In response, doc. #97, plaintiffs have explained why they seek the records in light of what discovery has already revealed.  Their investigation is legitimate.  Plaintiffs also observe that a protective order governs this case, which will shield from disclosure any confidential commercial information contained in the bank records.  What Plaintiffs seek, evidence of payments among and between parties which permits an inference that a kickback has occurred, is relevant and is neither confidential nor proprietary.

*Motions to Compel/Quash, docs. #100, #101 & #102*

Plaintiffs have moved to compel compliance with deposition subpoenas served on Roman Vcherashansky and Iliya Goldstein and a subpoena *duces tecum* served on A-Plus Realty Corp.  These non-parties' relationships to the individuals and entities involved in this case, including Lada Management, Inc., are set forth in doc. #100 at 2 so as to demonstrate that they may have relevant evidence to provide in this case.  According to plaintiffs, the process server reported back that Vcherashansky had assaulted him and threatened him with future violence.

In response, Goldstein and Vecheransky have moved to quash the subpoenas.  Doc. #101 (motion, supporting affidavit with exhibits and memorandum of law).  As to Vecheransky, the Court does not understand why this surname has been spelled one way in the subpoena, Vecheransky, and perhaps a significantly different way, Vcherashansky, in the motion to compel.  Because his attorneys have not observed the difference and have used the spelling as it appears in the subpoena, the Court will do the same.  As to Goldstein, plaintiffs' counsel observes that the subpoena addressed to "Ms. Iliya Goldstein" was subsequently followed by an affidavit of service from a process server who indicated personal service on a female.  Defense

5

counsel avers that Goldstein is male. Doc. #101 at 4 (Worms Aff. ¶7). Plaintiffs' counsel attributes the discrepancy, if any, to a translation/language barrier between the process server and the individual who was served and asks the Court to direct, if necessary, Worms and Val to cooperate in furnishing information to effectuate service on Goldstein. Thereafter, plaintiffs' counsel apparently anticipates that Goldstein will move to quash a properly served subpoena for the same reason advanced by Vecheransky.

Vecheransky contends, "Under the Federal Rules of Civil Procedure, a plaintiff normally cannot obtain discovery against a party until that party has been named in a lawsuit." Worms Aff. ¶20 (doc. #101 at 5). Wright, Miller & Marcus, Federal Practice and Procedure Civil 2d §2209 is to the contrary, as are provisions Fed.R.Civ.P. 30(a) with respect to depositions and Fed.R.Civ.P. 34(c) with respect to documents, things and inspections. Worms adds that his adversary is using pre-filing discovery on a fishing expedition in order to obtain testimony which will be used to transform Vecheransky into a party, as opposed to obtaining information with respect to the current defendants. He cites Yevdosin's deposition as an illustration, a point which plaintiffs would be hard pressed to controvert inasmuch as they intend to move at some point to add Yevdosin and Lada Management as defendants.

If Plaintiffs were attempting discovery upon someone wholly removed from the action, the Court would quash the effort, but the instant record discloses nothing of the sort. Vecheransky has not submitted an affidavit nor any document which indicates that he has not had anything to do with the defendants during the relevant time frame. The plaintiffs have already conducted considerable discovery towards proving the alleged fraudulent scheme and the trail now leads to Vecheransky and Goldstein. Doc. #102 at 2-3. The subpoenas, which do not

call for the production of documents, are also not burdensome. Finally, both defense counsel are directed to provide to plaintiffs' counsel the last known address for Goldstein.

Based on the foregoing, the motion to compel is *granted* as to Vecheransky and *denied* as to Goldstein for want of service. The defense motions to quash are *denied*.

SO ORDERED.

Dated: October 3, 2008
Brooklyn, New York

　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　JOAN M. AZRACK
　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE